NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
August, 1878.

## WILLIAMS v. EATON.

*In the matter of the estate of* REBECCA EATON,
*deceased.*

While, for the satisfaction of a mortgage upon real estate devised or descended, the real estate mortgaged is to be regarded as the primary fund, and under the provisions of 1 R. S., 749, § 4, goes to the devisee or heir, subject to the mortgage, still, where there is reason to anticipate a deficiency upon a foreclosure of the mortgage, the executor should be directed to reserve from the personal estate, a sufficient sum to afford the mortgagee his proportion of his demand against the estate *pro rata* with the other creditors, and to that extent should be required to satisfy the deficiency.

OBJECTIONS were filed to the accounting of the executrix of this estate, and an auditor having been appointed, found the account correct.

In schedule "D," a bond and mortgage of S. C. Williams for $2,500 was inserted. The amount of assets appeared to be $2,113.19, though in schedule "B" a large number of valueless claims were inserted. It also appeared that, including the mortgage above stated, there was a large amount of debts in excess of assets, and that the mortgage referred to was upon real estate in the State of Minnesota, which was estimated to be of considerably less value than the amount of the mortgage, and it was claimed that its foreclosure would be likely to leave a considerable deficiency. The question raised, on an application for a decree confirming the auditor's report, was whether any portion of the assets should be retained by the executrix to meet any deficiency which might result from such foreclosure.

The testimony did not show the value of the real estate covered by the mortgage, but the matter was submitted upon the assumption by all the counsel that there might be a deficiency.

EDGAR A. HUTCHINS, *for the mortgagee.*

R. F. ANDREWS, *for the executrix.*

JOHN C. LANG, *for creditors.*

THE SURROGATE. — By the provisions of section 4, 1 Revised Statutes, 749, it is provided that "whenever any real estate subject to a mortgage executed by any ancestor or testator shall descend to an heir or pass to a devisee, such heir or devisee shall satisfy and discharge such mortgage out of his own property, without resorting to the executor or administrator of his ancestor, unless there be an express direction in the will

of such testator that such mortgage be otherwise paid."

The case of Waldron v. Waldron (4 *Bradf.*, 114), is cited by the counsel for creditors as authority for the doctrine that the executor was not under obligation to pay any deficiency which might arise under the foreclosure; and Surrogate Bradford says: " Being a lien, however, upon the lands, the estate of the testatrix would not be chargeable with their payment, unless by some special direction in the will to that effect or by necessary implication."

But in the case under consideration by the learned Surrogate, there was a direction in the will to pay and discharge out of the personal estate all the testatrix's debts, whether on bonds and mortgages or otherwise, which was held to charge the estate with the payment of the mortgages, so that the statement above quoted was obviously *obiter*.

In the case of Lamport v. Beeman (34 *Barb.*, 239), cited by the same counsel, the question arose whether the heirs or devisees could compel an executor to pay the purchase money remaining unpaid upon the lands purchased by the testator, and held by him under a contract at the time of his death, out of the assets in the hands of the executor or administrator, and it was held that they could, upon the ground that the contract debt for the purchase money was not a mortgage within the intent and meaning of the above recited statute.

In Johnson v. Corbett (11 *Paige*, 265), the Chancellor, in referring to the statute above cited, says that " it expressly charges the mortgage debt upon the

mortgaged premises in the hands of the heir or devisee as the primary fund. The object of the statute was not to deprive the mortgagee of any part of his debt, where the real estate upon which it is a specific lien is insufficient to pay the whole of the debt, including the expense of foreclosure. All he can ask for, however, either at law or equity, under the provisions of the Revised Statutes, is that the balance of his debt beyond the value of the real estate upon which it is a lien shall be paid out of the personal estate *pro rata* with the claims of other creditors." (See also Halsey *v.* Reed, 9 *Paige*, 445.)

In Erwin *v.* Loper (43 *N. Y.*, 527), Allen, J., in discussing this question, says: "It is also true that lands mortgaged are, as between the devisee and the executor and the creditors and legatees of the testator, a primary fund for the payment of the mortgage debt, and if they are of insufficient value to pay the debt, the personal assets will not be charged."

The use by this learned judge of the term "primary fund" necessarily carries with it the idea, that if the primary fund be exhausted, then the general assets may be resorted to; and wherever language has been used to the contrary, as in some of the cases above cited, especially in Taylor *v.* Wendel (4 *Bradf.*, 324) — "the provisions of the Revised Statutes that mortgages are not a charge upon the general estate, but the devisee must take the land *cum onere* is never disturbed unless by some clear and express direction in the will" — it has been too broadly stated, and it was only intended to state that the real estate was the *primary fund*. It certainly would be very inequitable

to turn a mortgagee over to a devisee to recover the deficiency arising upon a mortgage executed to him by the testator, upon whose pecuniary responsibility, as well as the security of the real estate, he may be presumed to have received his mortgage.

I am of the opinion that it is my duty, under the circumstances of this case, to direct the retention of a sufficient fund to pay the deficiency which will probably arise on the foreclosure of the mortgage in question, in the same proportion that the other debts of the estate shall be paid. (2 *R. S.*, 96, § 94.)

As to the amount, I am not sufficiently advised, and if the parties cannot agree, there should be submitted some evidence, by way of affidavit or otherwise, to enable me to determine the amount which should be reserved.

Ordered accordingly.